# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT


## 07-641


SHANNON PIGRON

VERSUS

ALLSTATE INSURANCE CO.


**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 84900
HONORABLE THOMAS DUPLANTIER, PRESIDING
**********


## SYLVIA R. COOKS
## JUDGE


**********


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks and
Billy H. Ezell, Judges.


**AFFIRMED.**


J. Kirk Piccione
P.O. Box 3029
Lafayette, LA 70502
(337) 233-9030
COUNSEL FOR PLAINTIFF/APPELLANT:
    Shannon Pigron

Phillip Aucoin
400 E. Kaliste Saloom, Suite 8300
Lafayette, LA 70508
(337) 291-1743
COUNSEL FOR DEFENDANT-APPELLEE:
    Allstate Insurance Co.

**COOKS, Judge.**

Plaintiff, Shannon Pigron appeals the trial court's grant of summary judgment in favor of Allstate Insurance Company, finding a UM rejection form which included a binder number, but not a policy number, was valid. For the following reasons, we affirm.

## ANALYSIS

On September 20, 2005, Shannon Pigron was riding as a passenger in a van driven by Barbara Pigron. At some point, a truck driven by Eugene Quibodeaux, made an improper left turn into the path of the Pigron's vehicle and caused a collision. On that date, Allstate Insurance Company maintained a policy of motorist insurance covering Jimmie Pigron and his wife, Shannon. The issue in this case centers on the validity of a UM rejection form signed by Jimmie Pigron prior to the accident.

The record indicates on August 12, 2004, Allstate issued a binder (numbered 000041421034711) to the Pigrons. A UM rejection form was signed by Jimmie Pigron. However, on the blank provided for the insurance policy number on the UM rejection form, the binder number was entered instead. The application for insurance with binder number 000041421034711 was submitted electronically, and coverage was extended to the Pigrons on September 5, 2004, pursuant to the application. The effective coverage dates of that policy were from September 5, 2004 through March 5, 2005. The insurance policy was renewed every six months, with no changes, through the date of the accident, which occurred on September 20, 2005.

Shannon Pigron filed suit against Allstate, alleging it provided her with UM coverage. Allstate filed a Motion for Summary Judgment, contending the UM rejection form was valid. There is no dispute that a UM rejection form was signed

by Jimmie Pigron, but the form listed the binder number rather than the policy number. The Pigrons argued if a UM rejection form does not reference the correct *policy* number it is invalid on its face, citing the Louisiana Supreme Court case of *Duncan v. USAA Insurance Co.*, 06-363 (La. 11/29/06), 950 So.2d 544. The trial court disagreed, finding the present case was distinguishable from *Duncan*, because in *Duncan* the policy number was completely absent from the rejection form. In this case, the trial court noted the policy was clearly identified by the binder number, which is the predecessor to the policy number. Thus, the trial court found the waiver valid and granted Allstate's motion for summary judgment. The Pigrons appealed.

## ANALYSIS

In *Duncan,* the Louisiana Supreme Court set forth the applicable law in this area:

> A motion for summary judgment is a procedural device used when there is no genuine issue of material fact. The summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). Appellate courts review summary judgments *de novo* under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Schroeder v. Board of Supervisors of Louisiana State Univ.*, 591 So.2d 342, 345 (La.1991). A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. In ruling on the present cross motions for summary judgment, we will determine whether either party has established there are no genuine issues of material fact and it is entitled to judgment as a matter of law.

> In Louisiana, UM coverage is provided for by statute and embodies a strong public policy. *Roger [v. Estate of Moulton]*, 513 So.2d at 1130; *A.I.U. Ins. Co. v. Roberts*, 404 So.2d 948, 949 (La.1981). The object of UM insurance is to provide full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance. *Tugwell v. State Farm Ins. Co.*, 609 So.2d 195, 197 (La.1992); *Henson v. Safeco Ins. Co.*, 585 So.2d 534, 537 (La.1991); *Hoefly v. Government Employees Ins. Co.*, 418 So.2d 575, 578 (La.1982).

UM coverage is determined not only by contractual provisions, but also by applicable statutes. *Roger*, 513 So.2d at 1130. Thus, under the UM statute, the requirement of UM coverage is an implied amendment to any automobile liability policy, even when not expressly addressed, as UM coverage will be read into the policy unless validly rejected. *Daigle v. Authement*, 96-1662, p. 3 (La.4/8/97), 691 So.2d 1213, 1214; *Henson*, 585 So.2d at 537.

This court has held the statute is to be liberally construed. *Daigle*, 96-1662 at p. 3, 691 So.2d at 1214; *Roger*, 513 So.2d at 1130. The liberal construction given the UM statute requires the statutory exceptions to coverage be interpreted strictly. *Roger*, 513 So.2d at 1130. Any exclusion from coverage in an insurance policy must be clear and unmistakable. *Daigle*, 96-1662 at p. 3, 691 So.2d at 1214; *Roger*, 513 So.2d at 1130. In accordance with this strict construction requirement, the insurer bears the burden of proving any insured named in the policy rejected in writing the coverage equal to bodily injury coverage or selected lower limits. *Tugwell*, 609 So.2d at 197.

As stated by this court in *Roger*, 513 So.2d at 1130:

> The law imposes UM coverage in this state notwithstanding the language of the policy, the intentions of the parties, or the presence or absence of a premium charge or payment. Accordingly, to effect a valid rejection of the UM coverage under La. R.S. 22:1406(D)(1)(a), the insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer. A writing, regardless of the intention of the insured, of a less precise nature is insufficient to effect a valid rejection. (Citations omitted.)

*Id*. at 546-47.

The *Duncan* court then examined the legislative and jurisprudential history surrounding UM coverage in Louisiana and concluded the failure to fill in the policy number on the form invalidated the UM waiver. The court stated as follows:

> It has been suggested that even if the form is not properly completed, the result is merely that the presumption does not apply and therefore the insurer must prove the insured knowingly waived coverage. We disagree.

> This argument conflates the issues of form and intent. We find that, "The expression of a desire not to have UM coverage, however

clear, does not necessarily constitute a valid rejection if the expression of rejection does not meet the formal requirements of law," as stated by the First Circuit Court of Appeal in *Cohn*, 03-2820 at p. 5, 895 So.2d at 602, *citing Roger*, 513 So.2d at 1131. As stated above, the legislature gave the commissioner of insurance the authority to create a form and stated that "such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance." Pursuant to that mandate, compliance with the form prescribed by the commissioner of insurance is necessary for the UM waiver to be valid. The insurer cannot rely on the insured's intent to waive UM coverage to cure a defect in the form of the waiver. By failing to include the policy number in the blank provided on the form, the insurer failed to effectuate a valid rejection of UM coverage.

Moreover, we distinguish this failure to comply with the form prescribed by the commissioner of insurance from other types of clerical errors in insurance contracts. In *Samuels v. State Farm Mut. Auto. Ins. Co.*, 06-0034, p. 9 (La.10/17/06), 939 So.2d 1235, 1241 this court stated that a clerical error on the declarations page of a policy can be reformed to reflect the mutual intent of the parties. In that case, however, we addressed whether one umbrella policy was in excess of another umbrella policy, and we specifically considered that the outcome did not affect the amount of coverage afforded the insured. *Id*. at 1239.

In contrast, in *Washington v. Savoie*, 92-2957, pp. 6-7 (La.4/11/94), 634 So.2d 1176, 1180, this court differentiated UM coverage from other aspects of insurance law in the context of reformation, stating:

> While it appears clear that the parties in this case were in good faith when they attempted to correct a mutual mistake, a court's allowing the parties to change the effective date of the waiver by agreement, after the occurrence of plaintiffs' accidents and after the institution of lawsuits, would encourage bad faith "cooperation" between an insurer who seeks to avoid payment of claims and a named insured whose premiums are fixed on the basis of its loss experience. Although reformation of an insurance policy provision is valid between the parties when either party can prove a mistake in the policy which does not reflect their mutual intent, public policy precludes reformation of the effective date of a UM coverage rejection when the change adversely affects the rights of persons insured under the policy to recover damages under the UM coverage provisions before the change.

Similarly, the same concern of bad faith cooperation expressed in *Savoie* applies to the instant case because a third party guest passenger, not the insured, is attempting to recover under the UM coverage. Thus, reformation of a UM waiver is precluded when the change adversely

affects the rights of persons who, prior to the reformation, would be able to recover damages under the UM coverage provisions.

Therefore, we find the failure to fill in the policy number on the form prescribed by the commissioner of insurance invalidates the UM waiver, and consequently, the UM coverage is equal to the liability limits of the policy.

*Id*. at 553-54

The facts in the present case are different from those in *Duncan*. In *Duncan* the space where the policy number was supposed to be filled out was left blank. Here, the binder number clearly appeared on the rejection form, and the binder obligated the insured according to the terms of a specified policy, though the numbers on the binder and policy are different. Unlike in *Duncan*, 950 So.2d 544, 551, where the plaintiff there asserted "it would be absurd to 'conclusively presume' that the UM form becomes a part of the policy when the policy is not referenced and the form is not physically attached thereto," the policy in question here was referenced by the inclusion of the binder number. There is no dispute that the UM waiver in this case was to become a part of the policy later issued by Allstate.

Plaintiff argues the Supreme Court had the opportunity to amend its decision by granting rehearing in *Duncan* and could have stated that a binder number was sufficient. The Supreme Court is not in the habit of writing dicta. The issue was not before it. In *Duncan*, no number appeared on the UM form. We note as well, in the bulletin promulgated by the Louisiana Commissioner of Insurance, LIRC 98-03, insurers were advised that "where a policy number is not available, . . . a binder number may be inserted." Thus, Allstate contends it complied with the instructions given to the insurance industry by the Commissioner of Insurance. *See Carter v. State Farm Mut. Auto. Ins. Co.*, 07-1294 (La. 10/5/07), 964 So.2d 375, wherein the Louisiana Supreme Court specifically stated that the "Commissioner of Insurance's

-5-

regulations specifically allow omission of the policy number if it does not exist at the time UM waiver form is completed."

Plaintiff argues Allstate should not issue binders, but instead should issue policies. However, La.R.S. 22:631 provides insurers may issue binders:

> A "binder" is used to bind insurance temporarily pending the issuance of the policy. No binder shall be valid beyond the issuance of the policy as to which it was given.

Thus, binders are authorized by law. Although the binder is sufficient to evidence a contract, it does not stand independent from the policy. *Donaldson v. United Community Ins. Co.*, 98-1187 (La.App. 3 Cir. 2/10/99), 741 So.2d 676, *writ denied*, 99-727 (La. 5/7/99), 740 So.2d 1285. The binder is subject to the conditions of the policy contemplated. Appleman, et al., Insurance Law and Practice, § 7232 (1981).

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiff-appellant.

**AFFIRMED.**